UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANTHONY FEJERAN,<br><br>               Plaintiff,<br>    v.<br><br>UNITED AIRLINES, INC., a foreign corporation; CONTINENTAL MICRONESIA, INC., a foreign corporation; and DOES I-X individually; ROE CORPORATIONS, I-X,<br><br>               Defendants. | Case No. 2:16-cv-00026-MMD-GWF<br><br>ORDER |

**I.     SUMMARY**

This case concerns an employment discrimination claim brought by a former employee of Continental Micronesia, Inc. ("CMI") against CMI and United Airlines ("United"). Before the Court is Defendant CMI's Motion to Dismiss for lack of personal jurisdiction. The Court has reviewed Plaintiff's response and CMI's reply. For the reasons discussed below, CMI's Motion to Dismiss is granted.

**II.    BACKGROUND**

The following facts are taken from Plaintiff Anthony Fejeran's ("Plaintiff" or "Fejeran") First Amended Complaint ("FAC"). (ECF No. 38.)

Fejeran began his employment with Continental Airlines ("Continental") on March 16, 1991. In May 2012, a physician employed by the United Airlines Family Medical Center in Guam prescribed Fejeran the painkiller Tramadol for a work-related foot pain. Immediately after beginning to take Tramadol, Fejeran suffered from headaches,

anxiety, and panic issues. Over the following year, Fejeran experienced anxiety and an inability to focus. In August of 2012, Fejeran's employer[1] placed him on a termination warning for reacting improperly to an inflight/onboard situation. In February of 2013, Fejeran's employer launched an investigation when Fejeran's Flight Operating Manual was found to be incorrect. On February 22, 2013, a United-employed physician placed Fejeran on approved leave under the Family and Medical Leave Act ("FMLA") and referred him to a neurologist for an evaluation, including an MRI. Ultimately, Fejeran was diagnosed with Bipolar II Manic disorder as a result of taking Tramadol.

On April 5, 2013, Fejeran's employer required him to attend a meeting in Las Vegas, during which he was incoherent and unable to represent himself. His employer then informed him of a mandatory meeting to be held in Guam on May 7, 2013. Clarissa Perez, employed by Fejeran's employer, reiterated to Fejeran that the meeting was mandatory because he was on a "Last Chance Agreement." (ECF No. 38 at 4.) Fejeran's employer denied Fejeran's reasonable request for accommodation to reschedule the meeting or to participate by conference call. On May 10, 2013, Scott Goodman and Cynthia Iverson of the Association of Flight Attendants called Fejeran to let him know he would be terminated unless he agreed to retire that day. Scott Goodman, who was the Association of Flight Attendants' counsel, informed Fejeran that the "Company's position is that they must see an email from you today or they will withdraw their offer." (*Id.* at 5.)

On February 20, 2014, Fejeran filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On October 7, 2015, the EEOC issued a Notice of Right to Sue Letter.[2] The initial complaint in this case (ECF No. 1) was filed on January 6, 2016.

///

///

---

[1]At the time of alleged acts, it is unclear whether United, Continental, CMI, or some combination thereof were Plaintiff's employer(s).

[2]The FAC asserts that a true and correct copy of the letter is attached to the FAC. (ECF No. 38 at 3.) However, no such letter is attached to the FAC or to the initial complaint.

The FAC asserts two claims for relief: (1) disability discrimination, harassment and failure to accommodate pursuant to 42 U.S.C. § 12111 *et seq.* and NRS § 613.330; and (2) violation of FMLA pursuant to 29 U.S.C. § 2601 *et seq.* (ECF No. 38 at 5-7.)

### III.  LEGAL STANDARD

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the defendant's motions are based on written materials rather than an evidentiary hearing, "the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor. *Pebble Beach Co.*, 453 F.3d at 1154.

### IV.  DISCUSSION

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994). Since "Nevada's long-arm statute, NRS [§] 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *See Baker v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404-05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of

jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 1405 (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction.

Plaintiff argues that this Court has general jurisdiction over CMI based on the theory that CMI is the alter ego of United or, in the alternative, that the Court has specific jurisdiction over CMI based on an April 5, 2013, meeting that occurred in Las Vegas. (ECF No. 52 at 3-6.) The Court disagrees.

### A. General Jurisdiction Through Alter Ego

In his response, Plaintiff does not deny that CMI lacks sufficient contacts with the state of Nevada to establish general jurisdiction. Instead, Plaintiff contends that CMI is the alter ego of United, which has sufficient minimum contacts with the state of Nevada to establish general jurisdiction, because CMI is just a "shell" corporation with "no office, no office employees and no board of directors." (ECF No. 52 at 3.) Plaintiff states that CMI has no executives directing the airline's daily activities and instead all airline operations in Guam are run by United personnel and performed under the "United rubric." (*Id.* at 4.) Plaintiff also states that he received his initial medical treatment at a United health care facility in Guam, received personnel emails from a CMI employee with a united.com email address, and that CMI shares a corporate legal department with United.

In *Ranza v. Nike Inc.*, the Ninth Circuit held that a subsidiary may be found to be the alter ego of its parent corporation for purposes of personal jurisdiction. 793 F.3d 1059, 1071 (9th Cir. 2015). "To satisfy the alter ego test, a plaintiff 'must make out a prima facie case (1) there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate] identities would result in fraud or injustice.'" *Id.* at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)) (internal quotation marks and citation omitted). In order to meet the first prong of the test, a plaintiff may offer evidence of the parent's

involvement in: its subsidiaries' acquisitions, divestments and capital expenditures; formulation of general business policies and strategies applicable to its subsidiaries; provision of loans and other types of financing; and maintaining overlapping directors and officers. *Id.* at 1073-74 (citing *Unocal*, 248 F.3d at 927). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* at 1073. Ultimately, the alter ego test "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* (internal quotation marks and citation omitted). In addition, evidence of a failure to observe corporate formalities may lend support to a sham corporate veil. *Id.* at 1074.

Even accepting plaintiff's factual allegations as true, the Court finds that Plaintiff has failed to meet the first factor of the alter ego test laid out in *Ranza*. Plaintiff contends that CMI has no board of directors and no office; yet, he does not claim that CMI shares the same board of directors or officers with United.[3] Similarly, the fact that United and CMI share the same legal department and that a CMI manager uses a United email address merely show that United and CMI share management personnel. The fact that CMI employees use the United health care facility is also unpersuasive based on the same reasoning. Moreover, the fact that airline operations in Guam are conducted by United personnel or follow the United rubric is, by itself, insufficient to show that United has formulated the general business policies and strategies of CMI or even that United controlled the day-to-day operations of CMI, which ostensibly include more than operating flights. Thus, without more, Plaintiff has not made out a prima facie case that there exists a unity of interest and ownership between CMI and United such that CMI is the alter ego of United. Because Plaintiff has failed to satisfy factor one of the alter ego test, the Court declines to address the second factor.

Therefore, the Court may not exercise general jurisdiction over CMI.

---

[3]Plaintiff submitted an SEC filing of Continental Airlines. (ECF No. 52-1.) As this is not the same company as CMI, the Court does not find the exhibit to be relevant.

### B.     Specific Jurisdiction

Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011). Courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.* at 1076 (quoting *Schwarzenegger*, 374 F.3d at 802). The party asserting jurisdiction bears the burden of satisfying the first two prongs. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If it does so, the burden shifts to the party challenging jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Plaintiff fails to meet the first two prongs of the specific jurisdiction analysis. In his response, Plaintiff states that CMI purposefully availed itself of the Nevada forum by sending an employee to Nevada to "pull" him out of his FMLA protected leave. (ECF No. 52 at 5.) Specifically, Plaintiff is referring to a meeting that CMI required Fejeran to attend in Las Vegas on April 5, 2013. Plaintiff also states that he attended dozens of medical appointments in Las Vegas related to his bi-polar disorder. (*Id.*) The latter fact relates to Fejeran's own matter and is irrelevant to CMI's forum related activities; therefore, the Court considers only the meeting Plaintiff had with a CMI manager and supervisor on April 5, 2013. (*See* ECF No. 47-2 at 3-4.)[4]

---

[4]CMI admits that a meeting occurred between a CMI manager/supervisor and Plaintiff on April 5, 2013, in Las Vegas. (*See* ECF No. 47 at 7.)

First, the one meeting that occurred in Nevada is insufficient to establish that CMI purposefully availed itself of or directed its activities into the state. Based on CMI's allegations, which Plaintiff does not dispute, a CMI manager met with Plaintiff in Las Vegas to accommodate Plaintiff's medical leave. As CMI itself states in its reply, it had no "intention or purposeful desire to enter into the State of Nevada" but did so because of Plaintiff's connection to Nevada and inability to travel to Guam. (ECF No. 61 at 10.) Thus, CMI did not purposefully direct the type of activity in Nevada sufficient to satisfy the first factor.

Second, Plaintiff provides no allegations that his claims arise out of the April 5, 2013, meeting in Nevada beyond the meeting cutting into his FMLA protected leave in order to satisfy the second factor. *Lake v. Lake*, 817 F.2d 1416, 1421 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)) ("to support jurisdiction with only one forum state contact, the cause of action must arise out of that particular purposeful contact of the defendant with the forum state"). Plaintiff does not describe the contents of the meeting that took place on April 5, 2013, in his FAC but states in his response that the meeting was "to discuss his future with the company."[5] (ECF No. 52 at 5.) Moreover, Plaintiff's claims in the FAC appear to arise out of CMI's failure to accommodate him at a subsequent meeting set for May 7, 2013, in Guam, CMI's requests[6] that he attend meetings regarding his employment status while he was on medical leave, and the May 10, 2013, mandate that he either retire immediately or be immediately terminated. (ECF No. 38 at 4-5, 7.)

Plaintiff therefore has failed to meet his prima facie burden of establishing that jurisdiction in the state of Nevada is proper. Therefore, the Court may not exercise specific jurisdiction over CMI.

///

///

---

[5] CMI states that the meeting was a mandatory meeting required under the applicable Collective Bargaining Agreement. (ECF No. 47 at 7.)

[6] The FAC does not allege that the meeting on April 5 itself violated FMLA.

7

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of CMI's Motion.

It is therefore ordered that Continental Micronesia, Inc.'s Motion to Dismiss (ECF No. 47) is granted. Claims against CMI are dismissed for lack of jurisdiction.

DATED THIS 26th day of July 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE